1

2

3

4

5          UNITED STATES DISTRICT COURT

6          EASTERN DISTRICT OF WASHINGTON

7   HEATHER E.,

8                           Plaintiff,          NO. 1:20-CV-3235-TOR

9        v.                                     ORDER GRANTING PLAINTIFF'S
                                                MOTION FOR SUMMARY
10  COMMISSIONER OF SOCIAL                      JUDGMENT
    SECURITY,

11
                            Defendant.
12

13      BEFORE THE COURT are the parties' cross-motions for summary

14  judgment (ECF Nos. 14, 23).  Plaintiff is represented by D. James Tree.  Defendant

15  is represented by SAUSA Jeffrey E. Staples.  This matter was submitted for

16  consideration without oral argument.  The Court has reviewed the administrative

17  record, and is fully informed.  For the reasons discussed below, the Court grants

18  Plaintiff's motion and denies Defendant's motion.

19                          **JURISDICTION**

20      The Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 1

1

**STANDARD OF REVIEW**

2        A district court's review of a final decision of the Commissioner of Social

3   Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

4   limited: the Commissioner's decision will be disturbed "only if it is not supported

5   by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

6   1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)).  "Substantial evidence" means

7   relevant evidence that "a reasonable mind might accept as adequate to support a

8   conclusion." *Id.* at 1159 (quotation and citation omitted).  Stated differently,

9   substantial evidence equates to "more than a mere scintilla[,] but less than a

10  preponderance." *Id.* (quotation and citation omitted).  In determining whether this

11  standard has been satisfied, a reviewing court must consider the entire record as a

12  whole rather than searching for supporting evidence in isolation.  *Id.*

13       In reviewing a denial of benefits, a district court may not substitute its

14  judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

15  1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

16  rational interpretation, [the court] must uphold the ALJ's findings if they are

17  supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674

18  F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

19  ALJ's decision on account of an error that is harmless." *Id.*  An error is harmless

20  "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id.* at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that [he or she] is not only unable to do [his or her] previous work[,] but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

1    If the claimant is not engaged in substantial gainful activities, the analysis

2    proceeds to step two.  At this step, the Commissioner considers the severity of the

3    claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from

4    "any impairment or combination of impairments which significantly limits [his or

5    her] physical or mental ability to do basic work activities," the analysis proceeds to

6    step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy

7    this severity threshold, however, the Commissioner must find that the claimant is

8    not disabled.  *Id.*

9    At step three, the Commissioner compares the claimant's impairment to

10   several impairments recognized by the Commissioner to be so severe as to

11   preclude a person from engaging in substantial gainful activity.  20 C.F.R. §

12   416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

13   enumerated impairments, the Commissioner must find the claimant disabled and

14   award benefits.  20 C.F.R. § 416.920(d).

15   If the severity of the claimant's impairment does meet or exceed the severity

16   of the enumerated impairments, the Commissioner must pause to assess the

17   claimant's "residual functional capacity."  Residual functional capacity ("RFC"),

18   defined generally as the claimant's ability to perform physical and mental work

19   activities on a sustained basis despite his or her limitations (20 C.F.R. §

20   416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*,

700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On January 18, 2018, Plaintiff protectively filed an application for Title XVI supplemental security income benefits, alleging a disability onset date of December 31, 2017.  Tr. 15.  The application was denied initially, Tr. 115-123, and on reconsideration, Tr. 124-130.  Plaintiff telephonically appeared at a hearing before an administrative law judge ("ALJ") on July 7, 2020.  Tr. 37-60.  On July 30, 2020, the ALJ denied Plaintiff's claim.  Tr. 12-36.

At step one of the sequential evaluation, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 18, 2018, the application date. Tr. 17.  At step two, the ALJ found Plaintiff had the following severe impairments: chronic obstructive pulmonary disease, bullous lung disease, status post bullectomy, endometriosis, major depressive disorder, and posttraumatic stress disorder ("PTSD").  Tr. 18.  At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 19.  The ALJ then found that Plaintiff had the RFC to perform light work with the following limitations:

> She is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently.  She can stand and/or walk about 6 hours in an 8-hour workday and can sit about 6 hours.  She can occasionally climb ramps and stairs but never ladders, ropes, or scaffolds.  She can occasionally stoop and crawl.  She should have only occasional exposure to extreme heat, humidity, and irritants, such as; fumes, odors, dust,

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 6

gases, and poorly ventilated areas. She is able to understand, remember, and carryout simple, routine instructions. She should only have occasional interactions with coworkers and brief and superficial interactions with public.

Tr. 21.

At step four, the ALJ found that Plaintiff cannot perform past relevant work. Tr. 29. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as small products assembler I, office helper, and collator operator. Tr. 30-31. The ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from January 18, 2018 through July 30, 2020, the date of the ALJ's decision. Tr. 31.

On October 16, 2020, the Appeals Council denied review, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for this Court's review:

1.   Whether the ALJ properly assessed Plaintiff's gastrointestinal and carpal tunnel disorders;

2.   Whether the ALJ properly weighed Plaintiff's symptom testimony;

3.   Whether the ALJ properly assessed the medical opinion evidence; and

4.   Whether the ALJ erred in not discussing lay witness testimony.

ECF No. 14 at 2; ECF No. 23 at 3.

## DISCUSSION

### A.  Medically Determinable Impairments

Plaintiff contends the ALJ erred by failing to consider Plaintiff's gastrointestinal disorder and erred in determining Plaintiff's bilateral carpal tunnel syndrome was non-severe.  ECF No. 14 at 4-8.

At step two of the sequential evaluation process, the ALJ considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments."  *Webb v. Barnhart*, 433 F.3d

683, 687 (9th Cir. 2005).  An impairment must be established with objective medical evidence such as clinical and laboratory diagnostic techniques, subjective symptoms, a diagnosis, and a medical opinion are insufficient.  20 C.F.R. § 416.921.  An impairment is considered "not severe if it does not significantly limit your physical or mental ability to do basic work activities."  20 C.F.R. § 416.922(a).  Basic work activities include "physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling."  20 C.F.R. § 416.922(b).

Step two is "a de minimis screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  "It is not meant to identify the impairments that should be taken into account when determining the RFC." *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017).  A claimant's RFC should be the same whether or not certain impairments are considered severe. *Id.* at 1049.  Thus, where the ALJ decides step two in the claimant's favor, there is no prejudice in failing to designate a specific impairment as severe where the ALJ considers the impact of such impairment in formulating the RFC. *Id.*

At step two, the ALJ found Plaintiff had the following severe impairments: chronic obstructive pulmonary disease, bullous lung disease, status post bullectomy, endometriosis, major depressive disorder, and PTSD.  Tr. 18.

1    *1.  Gastrointestinal Disorder*

2         Plaintiff asserts the ALJ erred in not considering Plaintiff's gastrointestinal

3    ("GI") disorders at step two and not finding Plaintiff met Listing 5.06B for IBS at

4    step three.  ECF No. 14 at 4-7.  However, the ALJ accounted for Plaintiff's

5    abdominal pain and symptoms in the RFC, including alternating constipation and

6    diarrhea associated with endometriosis.  Tr. 23 (citing Tr. 397, 823, 890, 892, 974,

7    1102).  The ALJ also accounted for the various instances where Plaintiff presented

8    with no abdominal pain, nausea, vomiting, diarrhea, melena, or constipation.  Tr.

9    24 (citing 368, 388, 503, 569, 597, 734, 757, 867).  Where the ALJ decided step

10   two in Plaintiff's favor, the ALJ was required to consider evidence of all

11   impairments in assessing Plaintiff's RFC.  *Buck*, 869 F.3d at 1049.  The ALJ's

12   discussion at step four includes consideration of Plaintiff's abdominal and

13   digestive complaints in connection with Plaintiff's endometriosis.  Therefore,

14   Plaintiff is not prejudiced and any error is harmless.

15        Even if the ALJ were to find a medically determinable impairment of IBS,

16   Plaintiff fails to show Plaintiff's IBS was severe under Listing 5.06B at step three.

17   IBS is "documented by endoscopy, biopsy, appropriate medically acceptable

18   imaging, or operative findings with … Two of the following despite continuing

19   treatment as prescribed and occurring within the same consecutive 6-month period

20   … Serum albumin of 3.0 g/dL or less, present on at least two evaluations at least

60 days apart … [and] [i]nvoluntary weight loss of at least 10 percent from baseline, as computed in pounds, kilograms, or BMI, present on at least two evaluations at least 60 days apart." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 5.06.

Both the albumin and weight loss levels must occur within the same consecutive 6-month period. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 5.06. Plaintiff's albumin levels of 3.0 or lower were documented on December 17, 2019 and April 26, 2020. Tr. 882, 1151. As to the weight loss, Plaintiff merely assumes a baseline weight of 173 pounds. ECF No. 14 at 6. The ALJ's and Plaintiff's citations to Plaintiff's weight in the record demonstrate that Plaintiff was only 173 pounds when she was 30 weeks pregnant. *See* Tr. 18; ECF No. 14. During the relevant timeframe, Plaintiff generally experienced weight gain, not weight loss. *See* Tr. 903 (68 kg = 149.91 pounds on October 14, 2019); Tr. 847 (68.95 kg = 152.01 pounds on October 31, 2019 at 14 weeks pregnant); Tr. 1121 (170 pounds on February 13, 2020 at approximately 29 weeks pregnant); Tr. 1100 (173 pounds on February 21, 2020 at 30 weeks pregnant), Tr. 1103 (same). The Court finds Plaintiff fails to demonstrate that her alleged GI impairment met or equaled Listing 5.06B. Therefore, the ALJ committed no harmful error at step three by failing to consider the IBS listing.

2.  *Bilateral Carpal Tunnel Syndrome*

Plaintiff assert the ALJ erred in finding Plaintiff's bilateral carpal tunnel

1  syndrome ("CTS") non-severe at step two.  ECF No. 14 at 7-8.  The ALJ found

2  Plaintiff was diagnosed with bilateral CTS in May 2017 and prescribed Medrol,

3  wrist splints, and braces.  Tr. 18.

4    In finding the bilateral CTS non-severe, the ALJ first noted that Plaintiff

5  acknowledged that she has yet to undergo a nerve conduction study recommended

6  by her doctor, and that Plaintiff does not plan to have surgery for the CTS because

7  of her fear of surgery.  *Id.*  The ALJ found that if the bilateral CTS was as severe as

8  alleged, the ALJ would expect Plaintiff would make "every effort to exhaust all

9  treatment options to care for her conditions and make greater efforts to obtain care

10  for her conditions."  *Id.*  However, as Plaintiff points out, the record indicates she

11  had not heard from the clinic regarding the referral as of November 2018.  Tr. 857.

12  Additionally, the ALJ found in the same paragraph that Plaintiff testified to her

13  fears of surgery were an impediment to pursuing treatment.  Tr. 18.  Given that

14  Plaintiff provided an adequate reason based on her fear of surgery, this alone was

15  not a clear and convincing reason to find the bilateral CTS non-severe.  *Trevizo*,

16  871 F.3d at 679-82; SSR 16-3p, 2017 WL 5180304.

17    Second, the ALJ found no evidence that the condition caused significant

18  limitations in functioning for a continuous period of 12 months within the relevant

19  period.  *Id.*  In support of this conclusion, the ALJ cites to instances where Plaintiff

20  presented with normal motion, strength, and sensation and that Plaintiff could

perform some daily activities.  *Id.*  However, the record demonstrates Plaintiff also presented with swollen wrists and positive Tinel's testing, Tr. 437, Plaintiff testified she had difficulty with daily tasks, Tr. 52-53, and state agency sources found Plaintiff was limited to either occasional or frequent handling due to the bilateral CTS.  *See* Tr. 89, 106.  The ALJ rejected Dr. Hurley's medical opinion that Plaintiff was limited to light work but occasional bilateral handling based on the ALJ's own finding that the condition was non-severe.  Tr. 89.  Although the ALJ relied on some evidence to find the diagnosis as non-severe, significant evidence in the record demonstrates that Plaintiff's claim is at least debatable.  Thus, it has not been clearly established that Plaintiff's condition is non-severe.  *Webb*, 433 F.3d at 686.

The Court cannot say that the ALJ's conclusion that Plaintiff's bilateral CTS was non-severe was clearly established by medical evidence and that it is a groundless claim at this *de minimis* screening step.  Defendant asserts "there can be no harmful error" at step two.  ECF No. 23 at 18.  However, the ALJ's error affects the findings at step five and the assessment of Dr. Hurley's medical opinion, whose opinion the ALJ rejected solely based on finding the impairment as non-severe.  Therefore, this case is remanded to readdress Plaintiff's bilateral CTS at step two and thereafter.

**B.  Plaintiff's Symptom Testimony**

Plaintiff contends the ALJ failed to rely on specific, clear, and convincing reasons to discredit her symptom testimony.  ECF No. 14 at 8-16.

An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  SSR 16-3p, 2016 WL 1119029, at *2.  "First, the ALJ must determine whether there is 'objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Molina*, 674 F.3d at 1112 (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).  "The claimant is not required to show that [the claimant's] impairment 'could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom.'"  *Vasquez*, 572 F.3d at 591 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted).  General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims.

1   *Id.* (quoting *Lester*, 81 F.3d at 834); *Thomas*, 278 F.3d at 958 (requiring the ALJ to

2   sufficiently explain why he or she discounted claimant's symptom claims).  "The

3   clear and convincing [evidence] standard is the most demanding required in Social

4   Security cases."  *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc.*

5   *Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

6        Factors to be considered in evaluating the intensity, persistence, and limiting

7   effects of a claimant's symptoms include: (1) daily activities; (2) the location,

8   duration, frequency, and intensity of pain or other symptoms; (3) factors that

9   precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and

10  side effects of any medication an individual takes or has taken to alleviate pain or

11  other symptoms; (5) treatment, other than medication, an individual receives or has

12  received for relief of pain or other symptoms; (6) any measures other than

13  treatment an individual uses or has used to relieve pain or other symptoms; and (7)

14  any other factors concerning an individual's functional limitations and restrictions

15  due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7-*8; 20

16  C.F.R. § 416.929(c).  The ALJ is instructed to "consider all of the evidence in an

17  individual's record," "to determine how symptoms limit ability to perform work-

18  related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

19       The ALJ found that Plaintiff's physical and mental impairments could

20  reasonably be expected to cause the alleged symptoms; however, Plaintiff's

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 15

statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the evidence.  Tr. 22.  Rather, the ALJ found Plaintiff's statements were not entirely consistent with the medical evidence and other evidence and that such statements were found to affect Plaintiff's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical evidence.  *Id.*  Because there is no evidence of malingering in this case, the Court must ultimately determine whether the ALJ provided specific, clear, and convincing reasons not to credit Plaintiff's testimony of the limiting effect of her symptoms.  *Chaudhry*, 688 F.3d at 672.  The Court concludes that the ALJ in part failed to do so.

### 1. Objective Medical Evidence

An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991).  However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 16

1          a. <u>Physical</u>

2          First, the ALJ found Plaintiff's "relatively benign objective findings and

3     usually rather benign presentation appear incompatible with the reported frequency

4     and severity of her symptom and limitations." Tr. 24.  First, the ALJ failed to

5     adequately connect the medical record to Plaintiff's symptom testimony.  The ALJ

6     cites to a laundry list of "normal" physical exams such as normal, steady gait

7     and/or station and normal cervical spine and/or lumbar spine.  *See* Tr. 23-24.  The

8     ALJ fails to connect these findings to Plaintiff's impairments (that are primarily

9     related to lung and gynecological disorders).  As to these boilerplate findings, the

10    ALJ erred by failing to make a specific finding linking the medical record to

11    Plaintiff's testimony about the intensity or degree of her symptoms.  *See Burrell v.*

12    *Colvin*, 775 F.3d 1133, 1139-40 (9th Cir. 2014).

13         As to Plaintiff's pulmonary symptoms, the ALJ found Plaintiff reported

14    improved respiratory status since discharge with no pain or discomfort and that

15    Plaintiff at times denied shortness of breath, did not have episodes of

16    pneumothorax, nor concerns of pneumonia.   Tr. 24.  However, the ALJ's decision

17    also notes Plaintiff's extensive history regarding her pulmonary condition,

18    including surgery, hospitalizations, collapsed lung, pleural effusion, persistent

19    emphysema, diminished breath sounds, shortness of breath, respiratory distress,

20    pain with respiration, and abdominal tenderness.  Tr. 22-24.  For example, while

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 17

the ALJ found imaging in December 2017 did not show an infective process in chest imaging, Tr. 23, the record also demonstrates Plaintiff spent a total of 18 days between December 2017 and February 2018 in the hospital with lung symptoms, experienced persistent chest pains and shortness of breath, had imaging demonstrating lung scarring, and Plaintiff continued to seek emergency care for her shortness of breath through 2018 and 2019, and April 2020 imaging indicated right lobe infiltrate.  Tr. 285, 287, 310, 323, 376, 430, 468-469, 476, 508, 510-11, 524, 543, 575, 594, 632-33, 825-26, 833, 890, 896, 1018, 1066, 1148.  It is error for the ALJ to single out a few periods of temporary well-being from a sustained period of impairment and rely on those instances to discredit Plaintiff.  *Garrison*, 759 F.3d at 1017-18.  As a result, the ALJ's finding Plaintiff's pulmonary objective medical evidence as "benign" is not supported by substantial evidence.

Second, the ALJ found the statements of Plaintiff and her medical providers show her symptoms were not severe as alleged regarding her pulmonary symptoms.  Tr. 24.  That Plaintiff reported improved respiratory status at times does not conflict with events in the record that Plaintiff experienced respiratory distress.  While Plaintiff reported improved respiratory status in early January 2018, she later went to the emergency room for shortness of breath and painful respiration twice before needing inpatient treatment for sepsis and pleural effusion.  Tr. 312, 323, 597, 599.  The ALJ found in February 2018 she indicated shortness

of breath not at baseline, Tr. 24, but that finding is not inconsistent with her

testimony that she would get short of breath walking between buildings, taking

stairs, and that she uses riding carts in stores.  Tr. 51.  Finally, ALJ found Plaintiff

indicated she was not short of breath between January to April 2020, but that same

period show complaints of shortness of breath with activity and does not account

for Plaintiff being pregnant during this period, where evidence shows the

pregnancy may resolve her lung symptoms connected to endometriosis.  Tr. 24,

992-93, 985, 1018, 1995, 1022, 1065, 1148.  Plaintiff's testimony does not appear

inconsistent with the record.  The ALJ's finding was not supported by substantial

evidence.

   b. Mental

      As to the mental conditions, the ALJ found Plaintiff's mental health

objective findings insufficiently severe.  Tr. 26.  In support of this finding, the ALJ

found that while there are times Plaintiff presented depressed, anxious, tearful, or

restricted affect, Plaintiff generally had normal, appropriate, congruent mood

and/or affect, was cooperative, friendly, normal, and exhibited pleasant behavior,

was fully alert and oriented, and treatment providers typically observed Plaintiff as

being in no acute distress.  Tr. 26.  It is the ALJ's responsibility to resolve conflicts

in the medical evidence.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

Plaintiff's cited evidence does not overturn the ALJ's rational interpretation of the

1    remaining evidence in the record. *Burch*, 400 F.3d at 679 ("Where evidence is

2    susceptible to more than one rational interpretation, it is the ALJ's conclusion that

3    must be upheld."). The ALJ's finding is supported by substantial evidence.

4       *2. Failure to Follow Treatment*

5       a. <u>Physical</u>

6       In order to obtain benefits, a claimant generally must follow prescribed

7    treatment if the treatment is expected to restore the claimant's ability to work. 20

8    C.F.R. § 416.930(a). "A claimant's subjective symptom testimony may be

9    undermined by an unexplained, or inadequately explained, failure to . . . follow a

10   prescribed course of treatment." *Trevizo v. Berryhill*, 871 F.3d 664, 679 (9th Cir.

11   2017) (internal quotations and citations omitted). Failure to assert a reason for not

12   following treatment "can cast doubt on the sincerity of the claimant's [symptom]

13   testimony." *Id*.

14      First, the ALJ found that Plaintiff was not in full compliance with her

15   treatment plan for the pulmonary symptoms. Tr. 24-25. In November 2018, it was

16   noted that Plaintiff was recommended to undergo a lung surgery for a possible

17   spontaneous pneumothorax on the left lung. *Id.* However, this surgery was

18   recommended and not prescribed. SSR 18-3p. Moreover, the ALJ failed to

19   account for Plaintiff's testimony that she has a fear of surgery. Thus, this is not a

20

1  clear and convincing reason to discredit Plaintiff's symptom testimony.  SSR 18-

2  3p; *Trevizo*, 871 F.3d at 679-82.

3      Second, the ALJ found that Plaintiff's failure to stop smoking cigarettes as

4  recommended by her doctors was another example of noncompliance for treatment

5  of Plaintiff's pulmonary symptoms.  Tr. 24.  Given the addictive nature of

6  smoking, the Ninth Circuit has disfavored resting a credibility determination upon

7  the failure to quit smoking.  *See Bray*, 554 F.3d at 1227.  Moreover, SSR 18-3p

8  clarifies that "prescribed treatment does not include lifestyle modifications, such as

9  dieting, exercise, or smoking cessation."  2018 WL 4945641, at *3.  Thus, this is

10  not a clear and convincing reason to discredit Plaintiff's symptom testimony.

11      Third, the ALJ found that Plaintiff did not comply with treatment for

12  endometriosis.  Tr. 24.  In 2019, the treating doctor noted Plaintiff's endometriosis

13  is "pretty significant" but that she had been lost to follow-up historically.  *Id.*

14  However, lost to follow-up does not specifically indicate what treatment Plaintiff

15  has failed to follow and the record demonstrates Plaintiff continued to seek care for

16  the endometriosis.  Tr. 981, 985, 1014.  Additionally, while the ALJ cites

17  Plaintiff's improving symptoms during pregnancy, the ALJ fails to account for this

18  condition generally improving during pregnancy.  Tr. 1018.  As such, this is not a

19  clear and convincing reason to discredit Plaintiff's symptom testimony.

20

1      b.  <u>Mental</u>

2      The effectiveness of treatment is a relevant factor in determining the severity

3 of a claimant's symptoms.  20 C.F.R. § 416.929(c)(3); *Warre v. Comm'r of Soc.*

4 *Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (determining that conditions

5 effectively controlled with medication are not disabling for purposes of

6 determining eligibility for benefits); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040

7 (9th Cir. 2008) (recognizing that a favorable response to treatment can undermine a

8 claimant's complaints of debilitating pain or other severe limitations).  Pursuant to

9 SSR 16-3p at *8-9, the ALJ "will not find an individual's symptoms inconsistent

10 with the evidence in the record [for failure to comply with treatment] without

11 considering possible reasons he or she may not comply with treatment or seek

12 treatment consistent with the degree of his or her complaints."  2016 WL 1119029.

13      The ALJ found Plaintiff had undergone only sporadic mental health

14 treatment.  Tr. 26.  The ALJ noted Plaintiff had no individual counseling sessions,

15 was on antipsychotic medications for a short period of time, and that she had

16 improved symptoms both on and without medication.  *Id.*  Plaintiff asserts the ALJ

17 failed to consider her barriers to treatment under SSR 16-3p where she required

18 significant care for her lung condition, lost her home, and developed a fear of

19 doctors following her surgery.  ECF No. 14 at 13 (citing Tr. 285, 304, 443, 444).

20 However, Plaintiff's barriers do not appear to be connected to her failure to seek

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 22

1    mental health treatment, but rather to treatment for her physical conditions.  *See,*

2    *e.g.*, Tr. 47 (avoiding treatment for fear of undergoing complicated procedures);

3    Tr. 304 (fear and anxiety regarding lung condition); Tr. 443 (fear of doctors

4    stemming from lung surgery and mother's death following surgery).  Thus, the

5    ALJ did not err where there is no record that such barriers are connected to

6    Plaintiff's sporadic mental health treatment.  Moreover, Plaintiff's evidence does

7    not undermine the ALJ's reasonable determination that her treatment was sporadic

8    and conditions improved with medication.  The ALJ's finding is supported by

9    substantial evidence.

10        *3.  Work History*

11        Evidence of a poor work history that suggests a claimant is not motivated to

12    work is a permissible reason to discredit a claimant's testimony that she is unable

13    to work.  *Thomas*, 278 F.3d at 959; 20 C.F.R. § 416.929(c)(3).  When considering

14    a claimant's contention that he cannot work because of his impairments, it is

15    appropriate to consider whether the claimant has not worked for reasons unrelated

16    to her alleged disability.  *See Tommasetti*, 533 F.3d at 1040; *Bruton v. Massanari*,

17    268 F.3d 824, 828 (9th Cir. 2001) (sufficient reasons for disregarding subjective

18    testimony included stopping work for nonmedical reasons).

19        First, the ALJ found Plaintiff had the ability to work as a waitress and

20    bartender during the relevant period, which was some evidence that she was not as

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 23

1   significantly impaired as alleged as she was able to maintain some level of

2   superficial interaction with the public, maintain a schedule, and perform work

3   related tasks.  Tr. 27.  Where a claimant tries to work for a short period of time and

4   fails because of the impairments should not be a basis to discredit symptom

5   testimony.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007).  The

6   ALJ's observation that Plaintiff had short stints of work history during a period in

7   which she alleged she was disabled does not provide a clear and convincing reason

8   to discredit her symptom testimony.

9        Second, the ALJ found Plaintiff's poor work history related to factors other

10  than her medical impairments.  Tr. 27.  The ALJ noted Plaintiff had minimal to no

11  income between 2005 and 2012, minimal to no income between 2015 and 2017,

12  and most jobs since 2012 did not last more than a few months.  *Id.*  The ALJ

13  concluded this work history suggests Plaintiff's current lack of employment is

14  likely something of longer standing than the current health conditions.  *Id.*

15  Evidence of a poor work history that suggests a claimant is not motivated to work

16  is a permissible reason to discredit symptom testimony.  *Thomas*, 278 F.3d at 959;

17  SSR 96-7 (factors to consider in evaluating credibility include "prior work record

18  and efforts to work").  In *Thomas*, the claimant not only showed "little propensity

19  to work in her lifetime" but the ALJ also found "no objective medical evidence to

20  support [her] descriptions of her pain and limitations."  *Thomas*, 278 F.3d at 959.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 24

Plaintiff asserts the ALJ failed to consider her medical history during this period, including multiple laparoscopic surgeries for endometriosis, multiple miscarriages, and multiple hospital admissions.  ECF No. 14 at 15.  It appears the ALJ made no effort to discern the reasons for Plaintiff's short employment stints prior to the relevant period.  *See* Tr. 63 ("I had never quit a job in my life until all this and I just feel really defeated about it like I had to because I panicked.  I walked out on a job and I'd never done that before."); Tr. 573 (bartender position ended due to repeated hospital admissions).  As a result, this is not a clear and convincing reason to discount Plaintiff's symptoms.

Because this case is remanded for other reasons, the Commissioner is instructed to reevaluate Plaintiff's symptom testimony, and incorporate the reported limitations into the RFC or give clear and convincing reasons to reject the symptom claims.

### 4.   Medical Opinion Evidence

Plaintiff challenges the ALJ's evaluation of the medical opinions of L. Hacker, M.D., S. Haney, M.D., P. Metoyer, Ph.D., M. Kuppusamy, M.D., and W. Hurley, M.D.  ECF No. 14 at 16-20.

As an initial matter, for claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence.  20 C.F.R. § 416.920c(c); *see also Revisions to Rules*

*Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017).  The ALJ applied the new regulations because Plaintiff filed her Title XVI claim after March 27, 2017.  *See* Tr. 15; 27-29.

Under the new regulations, the ALJ will no longer "give any specific evidentiary weight … to any medical opinion(s)." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844-01, 5867-68.  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources.  20 C.F.R. § 416.920c(a)-(b).  The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant, specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" including but not limited to "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."  20 C.F.R. § 416.920c(c)(1)-(5).

The ALJ is required to explain how the most important factors, supportability and consistency, were considered.  20 C.F.R. § 416.920c(b)(2). These factors are explained as follows:

(1) *Supportability.*  The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the

more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) *Consistency*.  The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 416.920c(c)(1)-(2).

The ALJ may, but is not required to, explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. § 416.920c(c)(b)(2).  However, where two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported … and consistent with the record … but are not exactly the same," the ALJ is required to explain how "the most persuasive factors" were considered.  20 C.F.R. § 416.920c(c)(b)(2).

The parties dispute whether Ninth Circuit law that predates that new regulations apply.  ECF No. 14 at 16; ECF No. 23 at 10.  The Ninth Circuit currently requires the ALJ to provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  When a treating or examining physician's opinion is contradicted, the Ninth Circuit held the medical opinion can only "be rejected for specific and legitimate reasons that are supported by substantial evidence in the record."  *Id.* at 830-31 (internal citation omitted).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 27

1    At this time, the Ninth Circuit has not addressed whether these standards still

2    apply when analyzing medical opinions under the new regulations.  Either way, it

3    does not appear that the Court's analysis in the present case will differ in any

4    respect.

5    *1.  Drs. Hacker and Haney*

6    The ALJ found the opinions of Drs. Hacker and Haney most persuasive

7    where they are supported by narrative explanation and based on a longitudinal

8    evaluation of the record.  Tr. 28-29.  These opinions provided Plaintiff would have

9    "occasional lapses in attention, concentration, attendance, [and] pace[.]"  ECF No.

10    14 at 16 (citing Tr. 91, 108).  Plaintiff asserts where Plaintiff "occasionally" has

11    lapses in attention, concentration, and pace, she would violate absenteeism

12    tolerances because "occasional" means a condition exists up to 1/3 of the time.  *Id.*

13    (citing POMS DI 25001.001).  However, as Defendant points out, these opinions

14    found Plaintiff could "complete a usual work day and work week" with limitations

15    provided in the RFC, and Plaintiff points to no evidence that the opinions meant

16    the term "occasional" to have the definition set forth in the vocational context.

17    ECF No. 23 at 11.  There is no evidence in the record that the term "occasional"

18    was meant to have a meaning that would conflict with the simultaneous finding

19    that Plaintiff could complete a usual work day and work week.  Because the ALJ

20    accepted these opinions and incorporated the findings into the RFC, the ALJ did

not err in evaluating these opinions.

### 2. Dr. Metoyer

The ALJ found Dr. Metoyer's opinion less persuasive than the opinions of Drs. Hacker and Haney. Tr. 28-29. The ALJ found Dr. Metoyer's opinion not supported by and inconsistent with the longitude of the medical record. *Id.* at 29.

First, Plaintiff asserts the ALJ erred where the ALJ did not give any reason to discount Dr. Metoyer's limitations for Plaintiff in attendance and completing a normal workday or week. ECF No. 14 at 18. Defendants asserts that an assessment of Plaintiff's persistence was addressed in Drs. Hacker and Haney's opinions, and consequently, Dr. Metoyer's opinion was discounted where the ALJ found the other opinions more persuasive. ECF No. 23 at 13-14. As discussed *supra*, the ALJ found Dr. Haney and Hacker's opinions that Plaintiff could complete usual work day and work week most persuasive. Therefore, the ALJ's reason to discount Dr. Metoyer's opinion in this respect is incorporated in the acceptance of the other medical opinions.

Second, Plaintiff asserts the ALJ's reasons for discounting Dr. Metoyer's stress-related limitations are unsustainable. ECF No. 14 at 18-19. The ALJ found Dr. Metoyer's opinion that Plaintiff's ability to deal with the usual stress encountered in the workplace is markedly impaired if it involves persistent activity, complex task, task pressure, and interacting with other individuals not

1   supported by Plaintiff's sporadic course of mental health treatment and benign

2   presentation at medical appointments. Tr. 28-29, 447-48. However, it is unclear

3   how Plaintiff's sporadic mental health treatment and benign presentation at

4   appointments are inconsistent or not supported by a marked limitation in handling

5   stress encountered in the workplace. On remand, the Commissioner must reassess

6   this opinion.

7        *3. Dr. Kuppusamy*

8        The ALJ did not address Dr. Kuppusamy's opinion. Nothing in the new

9   regulations suggests the ALJ can outright ignore a medical opinion. *See* 20 C.F.R.

10   § 416.920(c)(a) ("We will articulate how we considered the medical opinions and

11   prior administrative medical findings in your claim according to paragraph (b) of

12   this section."). Following Plaintiff's surgery in December 2017, Dr. Kuppusamy

13   prohibited Plaintiff from working for 2 weeks and limited her from lifting more

14   than 10 pounds. Tr. 88. Plaintiff asserts this opinion should have been accounted

15   for where Dr. Kuppusamy put no time limitation on Plaintiff's lifting restrictions,

16   which would affect every light work job at step-5. ECF No. 14 at 20. Defendant

17   asserts "there is no indication that Dr. Kuppusamy intended the work limitation to

18   last [longer than twelve months]." ECF No. 23 at 14. Due to this ambiguity, the

19   Court instructs the Commissioner to articulate how this opinion is considered. 20

20   C.F.R. § 416.920(c)(a).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 30

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

### 4.  Dr. Hurley

The ALJ found Dr. Hurley's opinion unpersuasive solely based on the ALJ's own finding that Plaintiff's bilateral CTS was non-severe.  As discussed *supra*, the ALJ's step two determination regarding the bilateral CTS was error.  On remand, the Commissioner is instructed to reassess this opinion following a new step two determination.

### C.  Lay Witness Testimony

Plaintiff asserts the ALJ harmfully erred by not addressing the lay witness testimony of Brandy Brown, Plaintiff's sister.  ECF No. 14 at 20-21.  Any error in the failure to address lay witness testimony is harmless where the ALJ relied on substantially the same evidence for discrediting the Plaintiff that are legally sufficient.  *Molina*, 674 F.3d at 1121-22.  Here, the lay witness testimony is substantially similar to Plaintiff's own testimony.  *See* Tr. 42-77 (hearing); Tr. 283 (letter).  However, considering this case is being remanded in part to reevaluate Plaintiff's symptom testimony that the ALJ failed to support with substantial evidence, the Commissioner is instructed to also consider the lay witness testimony.

In sum, the Court cannot determine whether the errors in evaluating Plaintiff's medically determinable impairments, Plaintiff's symptoms testimony, and the ALJ's evaluation of the medical opinions were harmless because the

evidence evaluated may produce greater limitations than those contained in the RFC formulated by the ALJ.  The Court finds it appropriate to remand for the Commissioner to conduct further proceedings.  The Court does not find that the record as a whole compels this Court finding that Plaintiff is disabled.

**D.  CONCLUSION**

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and is not free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 14) is **GRANTED**.

2. Defendant's Motion for Summary Judgment (ECF No. 23) is **DENIED**.

3. This case is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order.

The District Court Executive is directed to enter this Order, enter judgment for Plaintiff, furnish copies to counsel, and **CLOSE** the file.

DATED December 13, 2021.



THOMAS O. RICE
United States District Judge

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 32